## Case No. 15,896.

### UNITED STATES v. NOBLOM et al.[1]

Circuit Court, D. Louisiana.    Feb. 18, 1878.

CONSPIRACY TO DEFRAUD THE UNITED STATES — TERRITORIAL JURISDICTION OF CIRCUIT COURTS — PRESUMPTIONS—EVIDENCE OF GOOD CHARACTER—OVERT ACTS.

[1. A conspiracy to do an unlawful act, formed in one district, and in part executed there, is punishable in that district, though it was consummated in other parts of the United States.]

[2. In a criminal case, where the syndic of a firm is charged with a conspiracy to defraud the United States in preferring a claim under the captured and abandoned property act, there is no invincible presumption that he had acquired all the knowledge from the books of the firm which a proper execution of his trust would have required him to gain; but the question of his knowledge is one for the jury to determine, upon a consideration of the character of the books, the degree of access which defendant had to them, the magnitude of the claim, the duty defendant owed both to the estate and the government to make a satisfactory examination before making affidavit of his belief in the validity of the claim, etc.]

[3. Evidence of good character may always be considered by the jury, and should lead them to scrutinize the evidence against the defendant, and, and, further, should be considered as an independent fact in his favor: but if, after giving such testimony this effect, the whole evidence in the case is sufficient to warrant a conviction, the jury are not authorized to withhold from the other evidence its proper effect, or to refuse to draw from it the legitimate conclusions.]

[4. An agreement whereby a commissioner taking evidence in support of a claim against the United States is to have a contingent fee of $5,000 is open to very serious objections, but is not necessarily a guilty agreement.]

[5. Where the existence of an unlawful conspiracy is proved, an overt act by one of the parties thereto becomes the act of all, and they are all alike guilty.]

[This was an indictment against Augustus P. Noblom, Henry Peychaud, R. H. Shannon, and others, charging them with conspiring to defraud the government.]

---

1 [Not previously reported.]

George S. Lacy, U. S. Dist. Atty., and John S. Blair, Asst. Atty. Gen., for the United States.

Wm. H. Hunt, for Henry Peychaud.

John E. Austin, for R. H. Shannon.

BILLINGS, District Judge (charging jury). The indictment charges that the defendants Henry Peychaud and Robert H. Shannon conspired with each other, and with the several other persons named in the indictment, and with divers other persons to the grand jury unknown, to defraud the United States of America of the sum of $296,000, the property and the moneys of the said United States; that the firm of Bellocq, Noblom & Co. had preferred a false claim against the government of the United States in the court of claims for the proceeds of 1,851 bales of cotton, upon which they alleged they had made advances, and which they had the right to reduce to possession, the same having been seized by the federal military forces as captured or abandoned property; that said cotton was situated on the plantations of various parties, planters, in the parishes of Avoyelles, St. Landry, and St. Martin, within the state of Louisiana; that the defendant Henry Peychaud subsequently became the syndic of the said firm of Bellocq, Noblom & Co., and on the 23d day of March, 1874, filed an amended petition in the court of claims as such syndic, in which he alleged that the firm of Bellocq, Noblom & Co. were the owners of the said cotton; that all of said cotton was purchased and paid for, or taken for advances on the same, during the years 1861 and 1862, and prior to the 1st day of May, 1862. This petition is sworn to in the following language: "Personally appeared, before me, Henry Peychaud, syndic aforesaid, a resident of the city of New Orleans, La., who, being first duly sworn, deposeth and saith that he is the claimant above described in the above petition; that no assignment or transfer of said claim, nor any part thereof, nor any interest thereof, has been made, except as in said petition stated; that the claimants are still entitled to the amount therein claimed from the United States, after allowing all just credits and offsets; and that he believes the facts as stated in the said petition are true." The indictment then proceeds to allege that, by the presentation of false untruthful testimony and deposition of witnesses, and of false and untrue exhibits and proofs presented to the judges of the said court of claims, a judgment was fraudulently obtained by the defendants for the said sum of $296,000 against the government of the United States; that said Henry Peychaud subsequently received the payment of the said money. The indictment then proceeds to allege various overt acts of the several persons charged with this conspiracy, who, it is alleged, well knew that the whole claim was a fraud upon the government; that said Peychaud appropriated, of said moneys, the sum of $50,000, to his own use; that, in furtherance of the said conspiracy, the said Henry Peychaud did unlawfully agree and contract with Theodore Vallade, one of the defendants, to give said Vallade a valuable consideration, to the grand jury unknown; that he, the said defendant Vallade, should appear as a witness in said case, and give testimony which should be used in said court of claims, in order to procure the said judgment; that the testimony of the said Vallade was in all material matters false and untrue, and was fraudulently obtained and used by the said defendant Henry Peychaud. Other overt acts are charged in the indictment to have been committed by the other alleged conspirators, which it is not necessary for me here to enumerate. The indictment alleges that the conspiracy on the part of the defendants was formed within the district of Louisiana, and was carried out and consummated in part within this district, and in part within various other districts of the United States.

So far as relates to the time at which the offense is alleged to have been committed, I charge you, as matter of law, that a conspiracy is a continuous thing; and, if you find that a conspiracy has been established in the manner and form as alleged, and that the conspiracy continued down to and after the 10th day of June, A. D. 1874, the date charged in the indictment, and that the overt acts charged were committed subsequently, and during the continuance of the conspiracy, that in that case the offense charged has been committed. As to the place of the commission of the offense the general rule, under the constitution of the United States, is that a party can be tried for an offense only within the district in which it was committed. The exception is that, where an offense has been commenced in one district and consummated in another, the venue may be laid and the trial may be had in either district. If you find, as a fact, that the conspiracy to do the unlawful act alleged in the indictment was formed within the district of Louisiana, and in part executed here, and that the offense was consummated in the United States, but in some other district than the district of Louisiana, but that all that was done, was done in pursuance of the conspiracy here formed, then, so far as relates to venue, the offense is cognizable by the United States courts within this district.

This indictment is framed under section 5440 of the Revised Statutes of the United States, which provides that, "if any two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner, or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not less than $1,000 and not more than $10,000, and to imprisonment for not more than two years."

It was incumbent upon the prosecution, in order to establish the case against these defendants, to prove to the satisfaction of the jury that there was a conspiracy on the part of these two defendants, or one of them, with some one or more of the persons named in the indictment, to defraud the government of the United States, by means of the collection of this claim, through and by means of the judgment obtained in the court of claims, and, further, that some one or more of the overt acts charged in the indictment were committed by one or more of the persons alleged and proved to have been conspirators.

First, as to the existence of the conspiracy. I will give you the definition of the nature of a criminal conspiracy, and an exposition of the evidence which may be adduced in support of it, in the language of one of the ablest of English writers upon the subject of criminal law: "The evidence in support of an indictment for conspiracy is generally circumstantial, and it is not necessary to prove any direct concert, or even any meeting of the conspirators, as the actual fact of conspiracy may be collected from the collateral circumstances of the case. Although the common design is the root of the charge, yet it is not necessary to prove that the defendants came together, and actually agreed in terms to have the common design, and to pursue it by common means, and so to carry it into execution, because in many cases of the most clearly established conspiracies there are no means of proving any such thing. If, therefore, two persons pursue by their acts the same object, often by the same means, one performing one part of an act, and the other another part of the same act, so as to complete it, with a view to the attainment of the object they were pursuing, the jury are at liberty to draw the conclusion that they have been engaged in a conspiracy to effect that object." The conspiracy is set forth in the indictment with great fullness, and it is alleged that it consisted in the combination for the presentation and collection from the United States through the court of claims of a false and fraudulent claim between divers persons and these defendants. In the first place it must be shown that there was this combination for that object; that is, to effect the presentation and collection of this claim through the defendant Peychaud, as syndic of the estate of Bellocq, Noblom & Co.; (2) that this claim was false; (3) that its false character was known to the defendants.

The next question, then, for the jury to determine, is, excluding for a moment the question of lawfulness or unlawfulness, was there a combination, on the part of the defendants and others, in which each labored with the common purpose of collecting this claim? The evidence which has been put before you by the government tends to show that the defendant Peychaud, as syndic, presented the claim; that the evidence was taken before the defendant Shannon under circumstances and with an agreement upon which I shall hereafter speak. The evidence on this point is not contradicted, nor attempted to be contradicted. If, then, this combination existed to collect this claim, the next question for the jury to consider is, was this a false and fraudulent claim? In this connection I will call the attention of the jury to the statute of the United States under which all petitioners or claimants have to act in the court of claims. The act of February 26, 1853, being an act entitled "An act to prevent frauds upon the treasury of the United States" (10 Stat. 170), in section 1, provides that "all transfers and assignments hereafter made of any claim upon the United States, or any part or share thereof, or interest therein, shall be null and void unless the same shall be made and executed after the allowance of such claims and the ascertainment of the amount due and the issuing of the warrant for the payment thereof." And the act to provide for the collection of captured and abandoned property, found in 12 Stat. 820, provides that "any person claiming to have been the owner of any such captured and abandoned property may at any time within two years, etc., prefer his claim to the proceeds thereof in the court of claims and on proof to the satisfaction of the court of his ownership of the said property and his right to the proceeds thereof, after the deduction of any expenses, may receive the proceeds."

It will thus be seen that to have enabled the defendant Peychaud to have brought the claim which he, as syndic of the firm of Bellocq, Noblom & Co., presented to the court of claims, within these statutes, the interest of Bellocq, Noblom & Co. in this cotton must have existed at the time of its seizure by the federal military forces, to wit, in March, 1862, and that any transfer of any claim against the United States, arising out of the seizure of this cotton, after that time, or the transfer of any receipt or voucher therefor, would have been in violation of the statute. There has been no evidence offered that there was any transfer of any interest in the claim, from those who held the same, at a date after the issuance of a warrant in payment of the same by the treasury department, and the statute renders void all transfer of claims unless they are made after the issuance of the warrant for their payment. It further appears, by these statutes, that any person seeking to recover the proceeds of captured or abandoned property, which had been seized by the United States and sold, and the proceeds paid into the treasury, must establish, in the first place, his ownership of said property, and his right to these proceeds. It was under these statutes that the claim of Bellocq, Noblom & Co. was presented by the defendant Peychaud, and was carried through the court of claims.

It is insisted by the prosecution that, with the exception of a few inconsiderable lots of

this cotton, the firm of Bellocq, Noblom & Co. had no right, title, or interest in or to any of this cotton at the time of its seizure by the authorities of the United States. For the purpose of supporting this view, it has brought before you the testimony of many of the persons enumerated in the tabular statement attached both to the original and amended petition, from whose plantations the cotton was taken, who testified that they owned the same, and they have in express terms denied that the firm of Bellocq, Noblom & Co., or the defendant Peychaud, as their syndic, had, at any time, any right, title, or interest in or to this property or its proceeds. There has been no contradictory testimony introduced to show any title in Bellocq, Noblom & Co., or in the defendant Peychaud as their syndic, excepting that which comes from the evidence given in the court of claims and the books of Bellocq, Noblom & Co. If the jury are satisfied that the claim of Bellocq, Noblom & Co., as presented by them, and by the defendant Peychaud as their syndic, to the whole of this 1,851 bales of cotton and its proceeds, was a valid claim, then that conclusion would end this case, and your verdict must be, "Not guilty"; for there could be no conspiracy to present and collect a fraudulent claim where the claim alleged to have been presented and collected was valid. But if, on the other hand, the jury are satisfied that the claim presented originally by Bellocq, Noblom & Co., and subsequently by Henry Peychaud, the defendant, as their syndic, was false or fraudulent, in whole or in part.—that is to say, if any portion of the 1,851 bales of cotton claimed by them, or him, the proceeds of which was recovered and received by him, did not belong to Bellocq, Noblom & Co.,—then to that extent the claim was false; and the jury will have to pass to the second question, did the defendants, at the time when they performed their several acts in the presentation or collection of this claim, know of the false and fraudulent character of the same?

First, as relates to the defendant Peychaud. I shall first present to you in a summary manner the leading facts which the government has attempted to establish in this case, and then shall present to you the leading facts which the defense has attempted to establish. The government, in the first place, has offered in evidence the amended petition of Henry Peychaud, in which he avers, not only, as in the original petition of Bellocq, Noblom & Co., that the said firm had made advances upon this cotton, with the right to reduce the same into possession, but he avers that they became the owners, and that all of the said cotton was purchased by them or taken for advances on the same, and possession taken thereof, during 1861 and 1862, prior to the 1st day of May, 1862. The second fact which the government has brought before you is an agreement between Peychaud, as syndic, and Bouchard and Bernard. In connection with this agreement, the gov-

ernment has offered the testimony of Bouchard. So far as his testimony is concerned, I deem it my duty to say to you that an accomplice or co-conspirator, who is called as a witness, and testifies to his own criminal acts, does not occupy the position of an ordinary witness, so far as relates to credibility. He may tell the truth in spite of his proclaimed turpitude, but, as a rule, he is not to be believed, unless and except so far as his evidence is corroborated by that of other witnesses, or by independent circumstances. It is, therefore, to the other evidence adduced by the government from other sources that your attention will be largely directed. As to this agreement between Peychaud, as syndic, and Bouchard and Bernard, it is not denied that the agreement was executed by the defendant as syndic. The agreement itself recites that it is for the services which Bouchard and Bernard were to render in this case, and Peychaud, as syndic, agrees to give them two-thirds of the amount which he should collect from the United States by means of the suit, they paying the fees of the various attorneys; that is to say, that the estate of Bellocq, Noblom & Co. was to receive one-third of the amount collected from the government, and Bouchard and Bernard the remaining two-thirds, they paying the various attorneys. It is for the jury to say what was the real purpose of this agreement, and what inference should be drawn from its execution, and whether a syndic, in a case where there were three lawyers already employed, and where he believed there was no fraud in a claim, would have engaged the services of a man of such reputation as the evidence shows Bouchard to have been, and would have left the conduct of such an important cause to him, and would have reserved to the estate only one-third of the amount recovered. There was a second agreement offered in evidence by the government, which is a mere reiteration of this one for the most part, and which seems to have been written with the view of securing to the parties named as attorneys a lien or privilege upon the judgment which should be recovered.

The next piece of evidence which the prosecution has introduced was the agreement between Bouchard and Bernard on the one part and Theodore Vallade on the other part, wherein it is recited that Vallade is the owner of 263 bales of the cotton, for the recovery of the proceeds of which suit had been brought by Bellocq, Noblom & Co., and wherein they agree that they will pay to him one-third of what may be recovered by the estate of Bellocq, Noblom & Co. on these 263 bales. This agreement is executed by Bouchard and Bernard, but is witnessed by Peychaud. The government has attempted to establish that there was an impediment as to these 263 bales of cotton arising from the claim of Vallade thereto, and that this agreement was made with him to remove that impediment; that, in pursuance of this agree-

ment, Vallade appeared and testified that the cotton which this agreement recites belonged to him was the property of Bellocq. Noblom & Co.; that Peychaud recovered the amount of the proceeds of these 263 bales; and that there was paid to Vallade one-third of this amount, being $14,848. If you are satisfied that Peychaud, the defendant, when he witnessed this agreement, or at any time before he collected the money upon the judgment which was rendered in the court of claims, knew what it contained, and knew that this cotton belonged to Vallade; that he afterwards used, or allowed to be used, in support of the claim which he as syndic preferred and collected, the testimony of Vallade, who testified in substance that the cotton belonged to Bellocq, Noblom & Co.; or if he ascertained these facts after the testimony had been used, but before he had made the collection,—then, and in either of these cases, so far at least as these 263 bales are concerned, he knew of the false and fraudulent character of the claim of Bellocq, Noblom & Co. thereto.

In connection with this, the government has urged the payment by Peychaud of $5,-000 to the defendant Shannon, of which I shall speak more particularly in another place, and of his leaving in the hands of Joseph S. Bouchard, as the attorney of A. Bouchard and Bernard, $14,848, which, according to the receipt produced by the defendant Peychaud, signed by Joseph S. Bouchard as the attorney of his father, was "to meet other demands." You will, in this connection, recall the testimony of Father Subileau, and you will say, from the amount left in Bouchard's hands,—that is to say, from the numerical figures of that amount, as compared with the net proceeds of 263 bales,—and from all the circumstances in evidence before you, whether Mr. Peychaud knew that this amount was to go to Vallade. Whatever you find to be the fact as to this money being left in the hands of young Bouchard, you will consider, as reasonable men, in connection with this agreement of Vallade, witnessed by Mr. Peychaud, and with the other facts in this case. It is immaterial whether Peychaud paid the money to Vallade, or whether it was paid by Bouchard, provided Peychaud knew of Vallade's ownership of the cotton, of Vallade's testimony, and of its use in a suit against the United States wherein he was the plaintiff. It is for you to consider why the defendant Peychaud was selected to be the attesting witness to this agreement; whether he knew of the terms of the agreement which he witnessed; whether Vallade did or did not require that he should witness it, in order that, since the money was to go through the hands of Peychaud, he should have that added security that the proportion covenanted to be paid to him should reach its destination. You will observe that this paper recites that Vallade was the owner of these 263 bales of cotton to which Peychaud,

as syndic, was at the time of its execution urging his claim in the court of claims, and that the agreement goes on to provide for the distribution of the proceeds in case there is a recovery by Peychaud as the property of Bellocq, Noblom & Co.

I think these are the chief circumstances which the government has attempted to establish. On the other hand, the defense has adduced evidence tending to establish that the conduct of the cause pending in the court of claims was left chiefly to Bouchard. The books of Bellocq, Noblom & Co. have been introduced before you, as well as the evidence of several experts who have examined the same. And, lastly, by the testimony of many of our most excellent citizens, has been shown the high character of the defendant Peychaud, for a life of 60 years passed in their midst previous to this transaction. So far as the defendant's knowledge from the books of Bellocq, Noblom & Co. is concerned, in a criminal case there is no invincible presumption that a man had acquired the knowledge which a proper execution of his trust would have required him to gain. It is not a matter of arbitrary presumption. You are to take the books as they existed. You are to take the degree of access which the defendant Peychaud had to them, the magnitude of the claim, the duty which the defendant Peychaud owed, alike to the estate and to the government, to have made a satisfactory examination of this claim before he proceeded to make any affidavit as to his belief of its validity, and all the circumstances which have been given in evidence, and then are to say whether the defendant Peychaud knew, directly or indirectly,—that is, of himself or through others,—what the books said on this subject, and what was his belief as to the validity of this claim, both at the time when he made the affidavit, and during all the intervening time down to the period when he collected the money. If, at any period of this time, he believed the claim, or any portion of it, was fraudulent, then all his subsequent acts would be affected by this knowledge, and from that moment he would be deemed, in law, to have joined the conspiracy to collect a fraudulent claim.

So far as relates to the proof of good character or the reputation enjoyed by the defendant Peychaud, the good character of an accused person is always a fact to be considered by the jury. It should lead the jury to scrutinize the evidence adduced in support of the commission of the crime charged, and their own process of reasoning upon that subject; and, further, should be considered as an independent fact in favor of the accused. Nevertheless, if, after this application of the testimony in favor of good character has been made, and this effect given to it, the whole evidence in the case is sufficient to warrant a conviction, the jury are not authorized to withhold from the other evidence its proper effect, or to refuse to draw from it the legiti-

mate conclusions. While good character is always an element to be considered, and there are cases in which it would furnish evidence which would create a reasonable doubt of guilt, there are also cases in which the former spotless character of the accused could not overcome the weight of testimony in support of guilt. That is to say, good character is always to be considered and weighed, but it is to be considered and weighed along with the other testimony, and must not be allowed to obscure from your observation the other testimony in the case. Again, it is urged by the defense that the defendant Peychaud was a mere syndic in his action with reference to this claim. That is to say, it is urged that he presented this claim, for the most part, as the representative of the estate of Bellocq, Noblom & Co., and those who were associated with him. If the evidence fails to show that any portion of the proceeds of this cotton was intended to be retained, or was retained, by the defendant Peychaud, beyond his commission as syndic, this fact does not obliterate the other facts you will find to have been established; but it is to be considered by you, along with all these other facts. It diminishes the strength of the motive for the commission of the crime charged, but, beyond that, leaves the other facts in the case such as you find the evidence to have established them to be.

Next, as to the defendant Shannon. If the jury find there was a combination, and that the claim was fraudulent, then, as to the defendant Shannon the same inquiry must be made as I have stated should be made with reference to the defendant Peychaud, as to his knowledge of the falsity and fraudulent character of this claim. The prosecution have introduced evidence tending to show the fact that the defendant Shannon had an agreement by which he was to receive a contingent fee of $5,000 for taking the evidence in this case. An agreement of this nature, by a commissioner, with reference to the taking of testimony is open to very serious objections; that it would expose the commissioner to severe criticism, and would open a wide door for temptation to him. But it is not, necessarily, a guilty agreement. The jury are to judge whether, in this case, the agreement was evidence of any knowledge of the falsity of the claim, or of any understanding between the defendant Shannon and those with whom he made it that there was to be anything unfair or partial in the manner of taking the testimony. Bouchard has made a statement as to what passed between him and the defendant Shannon. In connection with the evidence relating to the defendant Peychaud, I have already laid down the legal propositions which should be considered by the jury in weighing the testimony of a witness such as is Bouchard. There is the testimony of the witness Wilde, and there is a letter from the defendant Taylor, and also a letter from

the defendant to J. S. Bouchard, which I think comprises all the evidence which has been urged against the defendant Shannon. On the other hand, you have heard the evidence of the younger Mr. Conrad, and of Mr. Rouse, who represented the government, and that of Judge Emerson, and you have had the manner in which the depositions were taken shown to you from the depositions themselves.

In regard to the defendant Shannon no evidence as to general character was introduced. In such a case the law assumes that the character of the accused is of ordinary fairness and respectability. The attorneys who have testified have testified that the method and manner of the defendant Shannon were, so far as they could perceive, proper and impartial, and it is for you to say, upon the whole evidence, whether you are satisfied that the defendant Shannon had a knowledge of the falsity of the claim, and fraudulently aided in establishing a false claim. If you find, from the evidence, that the defendant Shannon knew that the claim was a false one, then he had a guilty knowledge. If you find that he did not know that the claim was false or fraudulent, and that the evidence taken before him was, so far as he knew, truthful evidence, then he has not been affected with any guilty knowledge. If you find that the combination is proved, and that the fraudulent character of the claim has been established, and that either or both of these defendants had no knowledge of the false or fraudulent character of the claim, then they are, or the one that had not such a guilty knowledge is, entitled to an acquittal. If, on the other hand, you find that the conspiracy existed, and that both of these defendants, or either of them, knew of the false and fraudulent character of this claim at the time they participated and aided in presenting or collecting it, then the remaining question will be, were any of the overt acts charged in the indictment committed? Because the rule of evidence in connection with a criminal conspiracy is that, where an unlawful combination is established, the act of one of the parties is the act of all. If, for example, the conspiracy has been established, and you find that the defendant Peychaud took out of the treasury of the United States this money charged to have been taken out by him, or any portion of it, during the continuance and in furtherance of the conspiracy, then his act is the act of all those whom you find, from the evidence, to have been conspirators, and who are named in the indictment.

So far as the degree of proof is concerned, it is the duty of the prosecution to establish the case by evidence which excludes a reasonable doubt of the guilt of the accused. But the doubt which the prosecution must remove is an actual and substantial doubt, and not a mere possibility or speculation. Says one of the most eminent of the Ameri-

can jurists: "It is not a mere possible doubt, because everything relating to human affairs depending upon moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after an entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say, with a full and abiding conviction, as to the moral certainty of the truth of the charge."

The importance of the duty which you, as jurors, have been called upon to discharge, when duly considered, can scarcely be overestimated. Without trials by jury, on the one hand, would disappear much of the security of the citizen from the unjust and tyrannical forms of investigation, and the consequent imposition of undeserved punishment. On the other hand, without the fearless consideration of causes by juries, the government could not long administer its criminal laws, and its power to protect all would thus be seriously paralyzed. Much, therefore, not alone of the right of innocence to be protected, but of the efficacy of the law as a protective agency, rests in the intelligence and integrity with which jurors render their verdicts. Your verdict should not be the exponent of your sympathies, either for the government or for the accused, but should be a conscientious declaration of your judgment upon the evidence as it has been adduced before you.

